**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Richard BRYL, Defendant and Appellant.**

Cr. Nos. 910132, 910133.

Supreme Court of North Dakota.

Nov. 15, 1991.

---

Lonnie Olson, States Atty., Devils Lake, for plaintiff and appellee; submitted on brief.

John W. Frith, Frith Law Office, Devils Lake, for defendant and appellant; submitted on brief.

GIERKE, Justice.

The defendant, Richard Bryl, appeals from criminal judgments in Ramsey County for driving while under the influence of alcohol and driving while under suspension. Prior to trial, Bryl moved for the suppression of all evidence which was obtained after he was stopped by police on January 2, 1991. This motion was denied. Bryl then entered a conditional plea of guilty to Driving Under the Influence and Driving Under Suspension, pursuant to Rule 11(a)(2), N.D.R.Crim.P. We affirm.

Richard Bryl was arrested in the early morning hours of January 2, 1991. The Lake Region Law Enforcement Center in Devils Lake had received a telephone call from the attendant at the Super Pumper convenience store, describing an intoxicated man who was sitting in a pickup in the Super Pumper parking lot.

The attendant, Ms. Shelly Rutten, believed that Bryl had twice entered the convenience store. Ms. Rutten indicated that Bryl had staggered through the aisles of the store and was nonresponsive to her questions. She could also clearly smell the odor of alcoholic beverages when Bryl stepped up to the counter. The defendant then made a purchase by giving his whole

wallet to Ms. Rutten to retrieve the money for the item. He then left the store and got into a pickup. He remained parked in the lot for approximately twenty minutes. At 2:23 a.m., Ms. Rutten telephoned the police and told the dispatcher that there was an intoxicated man sitting in a pickup in the Super Pumper parking lot.

Officer David Fix, Patrolman for the Devils Lake police force, was notified by the dispatcher that there was an intoxicated person in a pickup at the Super Pumper store. Within two minutes, Officer Fix drove into the parking lot. When he arrived, he noticed a parked vehicle which he knew to be that of the Super Pumper attendant, and a pickup which was just leaving the lot. Officer Fix began to follow the pickup and activated his lights within a half a block. Officer Fix testified that he did not notice any driving behavior that would have made him stop the pickup. Officer Fix approached the pickup and asked the defendant for identification. Subsequently, Bryl was arrested.

Bryl was then taken to the Lake Region Law Enforcement Center so that a chemical test could be performed. Bryl consented to the intoxilyzer test. Prior to being tested, Officer Fix noticed Bryl working his tongue around his lower lip area. Officer Fix then had Bryl rinse his mouth to remove foreign substances. Prior to testing Bryl was again working his tongue in his mouth and again Officer Fix watched while Bryl rinsed his mouth. After at least twenty minutes, Bryl was tested by the Intoxilyzer 5000, to determine his blood alcohol concentration, which was found to be in excess of ten one-hundredths of one percent by weight.

A hearing was held to suppress the evidence of the intoxilyzer test based upon two theories. First, that Officer Fix did not have reasonable suspicion to stop Bryl based upon the information supplied by the informant, and second, that the presence of chewing tobacco in the defendant's mouth when the intoxilyzer test was administered violated the state toxicologists approved methods, thereby invalidating the test results. Judge Foughty denied both of the defendant's motions. On appeal, Bryl argues these same issues.

■ "The trial court's disposition on a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination." *State v. Huether*, 453 N.W.2d 778, 780 (N.D.1990) (citing *State v. Lorenzen*, 401 N.W.2d 508, 508 (N.D.1987)). This standard of review recognizes the trial court's opportunity to weigh the credibility of the witnesses and the testimony presented. *State v. Ronngren*, 361 N.W.2d 224, 230 (N.D.1985) (citing *State v. Frank*, 350 N.W.2d 596, 599 (N.D.1984)).

■ This court has most recently addressed the issue of investigative stops in *State v. Neis*, 469 N.W.2d 568 (N.D.1991). In order to have a valid investigatory stop, "[A]n officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to legally stop a vehicle." *Id.* at 569 (quoting *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986)). "The standard is an objective one. The question is whether or not a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in criminal activity." *State v. Indvik*, 382 N.W.2d 623, 627 (N.D.1986) (citing *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). This reasonableness standard includes inferences and deductions that an officer would consider, which may elude a lay person. *State v. Lykken*, 406 N.W.2d 664, 666 (N.D.1987) (citing *State v. VandeHoven*, 388 N.W.2d 857, 858 (N.D.1986)). Also it is noted that the facts that an officer relies upon to stop a vehicle need not be from the officer's personal observation, but may be found in information acquired from another person. *State v. Lykken*, 406 N.W.2d 664, 666 (N.D.1987) (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)).

■ When viewing circumstances surrounding an investigative stop, we must consider whether the state's interest in in-

vestigating the tip outweighs the person's fourth amendment rights. *Wibben v. N.D. State Highway Commissioner,* 413 N.W.2d 329, 332 (N.D.1987). The officer who has been alerted to a possibly intoxicated driver does not need to wait until there has been an accident or a clear traffic violation before an investigatory stop can occur. *State v. Lange,* 255 N.W.2d 59, 63 (N.D.1977). *See State v. Neis,* 469 N.W.2d 568, 570 (N.D.1991).

■ Although there was some differing testimony as to what Shelly Rutten told the dispatcher and what the dispatcher relayed to Officer Fix, it is known that the officer was advised that there was an intoxicated subject in a pickup at the Super Pumper station. From the information that Officer Fix had at that time, it was reasonable for him to believe that the pickup leaving the lot was the pickup that contained the intoxicated person. There was an articulable suspicion that the vehicle was being driven by an intoxicated person.

■ "[I]nformation from an anonymous informant used for an investigative stop must be sufficiently reliable to support a reasonable suspicion of unlawful conduct, though not the more exacting standard of probable cause necessary to make an arrest." *Wibben v. N.D. State Highway Commissioner,* 413 N.W.2d 329, 331 (N.D.1987). *See City of Minot v. Nelson,* 462 N.W.2d 460, 462 (N.D.1990); *State v. Dorendorf,* 359 N.W.2d 115, 116 (N.D.1984). This tip is much like the one in *State v. Neis,* 469 N.W.2d 568 (N.D.1991). In *Neis,* the informant identified herself, the vehicle and the behavior, which was the same information that Shelly Rutten gave to the dispatcher. *Id.* at 569. This information provided certain indications of reliability of both the informant and the information.

■ Bryl argues that this evidence should be suppressed because the tip gave no indication of criminal activity, citing *City of Minot v. Nelson,* 462 N.W.2d 460,

462 (N.D.1990). However, in *Nelson* the tip came from an unidentified person who gave the license number and the location of a suspicious vehicle but indicated no criminal activity. *Id.* at 461. This court reversed the lower court's denial of the motion to suppress evidence. *Id.* at 462. This court found that the unidentified informant and the tip were unreliable. Also, because the tip did not indicate any criminal activity, there was no articulable suspicion for a stop. *Id.*

In this case the facts are easily distinguishable. This tip was provided by an identified person who had seen behavior that indicated to her that the man in the pickup was intoxicated. While the informant did not identify the pickup by color or license number, she did supply information regarding the location of the vehicle and the condition of the occupant. Officer Fix was able to verify this information when he saw the pickup in the Super Pumper lot within two minutes of receiving the call. Considering the quick reaction time of Officer Fix and the late hour, it was reasonable to determine that the pickup leaving the lot was the pickup in question. In fact, the only other vehicle in the lot at approximately 2:35 a.m., was one which the officer recognized as belonging to the Super Pumper employee, Shelly Rutten.

Here, due to information known to Officer Fix at the time, we believe he had a reasonable and articulable suspicion to warrant an investigatory stop. Therefore, the stop was not unreasonable, and the denial of the motion to suppress is affirmed.

■ The second issue raised on appeal is the accuracy of the results of the intoxilyzer test. The defendant asserts that because he had chewing tobacco in his mouth when he blew into the machine, the state toxicologist's procedures were not followed and that the test results should be invalidated.[1]

Under Section 39–20–07(5) N.D.C.C.:

---

1. Under the Approved Method to Conduct Breath Test with Intoxilyzer, issued by the state toxicologist pursuant to Section 39–20–07(5), N.D.C.C., the "operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." N.G.S. Rao, Ph.D. *Ap-*

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist."

See *Moser v. North Dakota State Highway Commissioner*, 369 N.W.2d 650, 653 (N.D.1985) (for a discussion of the admission of breathalyzer test results).

When a test has been properly and fairly administered, the foundational requirement for the results has been established.

"Absent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court. Thus, reliability and accuracy of the results are established by demonstrating compliance with the methods adopted by the state toxicologist. Because the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing throughout the state and fair administration".

*Moser*, 369 N.W.2d at 653–54.

In this case, the defendant was twice asked to remove any substances from his mouth. After the second request, the officer began the required twenty minute waiting period. Unknown to the officers, the defendant continued to hold chewing tobacco in his mouth in an attempt to alter the results of the test.

A person cannot intentionally retain a substance in his or her mouth after being requested to dispose of it, and then claim that the intoxilyzer test results are inaccu-

rate based upon failure to comply with the approved methods. We hold that in such a case, a defendant cannot challenge the foundation for the admission of the test results established by following the approved methods.[2] Therefore, the denial of the motion to suppress the evidence of the intoxilyzer results is also affirmed.

VANDE WALLE, Acting C.J., VERNON R. PEDERSON, Surrogate Judge, and LEVINE and MESCHKE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.

---

*proved Method to Conduct Breath Test With Intoxilyzer*, dated June 6, 1988.

2. This conclusion is consistent with our decision in a companion case, *Bryl v. Backes*, 477 N.W.2d 809 (N.D.1991).