STATE of North Dakota, Plaintiff and Appellee,

v.

Ronald A. KETTLESON, Defendant and Appellant.

Cr. No. 910373.

Supreme Court of North Dakota.

May 20, 1992.

Mark R. Boening, Asst. State's Atty., Fargo, for plaintiff and appellee.

James F. Lester, Fargo, for defendant and appellant; submitted on briefs.

VANDE WALLE, Justice.

Ronald A. Kettleson appealed from a criminal judgment of conviction for driving while under the influence of alcohol. Prior to trial, Kettleson moved to suppress all evidence which was obtained after he was stopped by the police. The county court denied this motion. Kettleson entered a conditional plea of guilty to Driving Under the Influence, pursuant to Rule 11(a)(2), NDRCrimP. We affirm.

Kettleson was twice stopped on the morning of his arrest. He was first stopped by North Dakota Highway Patrolman James Metheny when Metheny responded to calls to state radio reporting a blue Volvo station wagon with Wisconsin

license plates driving erratically on Interstate Highway 94. Kettleson told Metheny he was extremely tired; he intended to stop driving and take a motel room. Metheny did not arrest Kettleson.

Approximately one half hour later, Cass County Sheriff's Office received reports of a blue Volvo station wagon with Wisconsin license plates driving the wrong direction on I–94. West Fargo Police Officer Terry Styf responded and stopped Kettleson on an exit ramp. After Kettleson failed field sobriety tests, including an alco-sensor, he was arrested and charged with driving while under the influence of alcohol.

In his motion to suppress all evidence secured after his second stop, Kettleson argued that Styf did not have sufficient cause for the stop. On appeal, Kettleson challenges the denial of his motion to suppress evidence, raising the same argument.

■ We will reverse a trial court's disposition of a motion to suppress only if there is, after resolving conflicts in favor of affirmance, insufficient competent evidence fairly capable of supporting the trial court's determination. *State v. Bryl*, 477 N.W.2d 814 (N.D.1991). This standard of review acknowledges the trial court's opportunity to weigh the credibility of the witnesses and their testimony. *Id.*

■ An officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to make a lawful investigative *stop of a motor* vehicle. *State v. Neis*, 469 N.W.2d 568 (N.D. 1991). This suspicion may be based on information given by another person; it need not be from the officer's personal observation. *Bryl, supra.* When many apparently unassociated people report the same fact, the probability that the fact is true is increased. *State v. Birk*, 484 N.W.2d 834 (N.D.1992). The reasonableness of the suspicion is tested against an objective standard. "The question is whether or not a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in criminal activity." *State v. Indvik*, 382 N.W.2d 623, 627 (N.D.1986).

■ Kettleson was arrested during the second stop. Because the basis for this stop came, in part, from information discovered in conjunction with the first stop, we review the validity of the first and second stops.

North Dakota Highway Patrol Officer James Metheny made the first stop of Kettleson. Metheny was called at home by state radio and ordered to intercept a blue Volvo station wagon and given its Wisconsin license plate number. State radio had received multiple reports of the car "speeding, going through the median, driving around in circles, and driving badly;" Metheny was given these reports. During the stop, Metheny questioned Kettleson who said he had not slept for forty hours. Because the results of field sobriety tests performed on Kettleson were inconclusive, and Kettleson assured Metheny that he would rest before continuing his journey, Metheny released Kettleson.

The record identifies one of the informants who called state radio. Cary Muscha was driving east on I–94 towards West Fargo when he received a message on his citizen's band radio. A driver had observed a blue Volvo driving erratically and wished some listener to relay this report to state radio. After Muscha stopped and telephoned state radio, he resumed driving. As he approached a weigh station located west of West Fargo, Muscha saw a blue Volvo station wagon driving in circles in the weigh-station parking lot. The Volvo drove out of the weigh station and in front of Muscha. The two cars drove eastbound and into a highway construction zone. Muscha called on his radio and asked any listener to relay to the authorities a report of the erratic driving Muscha witnessed along with Muscha's location, a description of his car, and his plan to follow the Volvo until authorities arrived. As they drove through the construction zone, Muscha saw the Volvo cross into the lane of on-coming traffic, nearly colliding with a truck, and, veering onto the right shoulder of the road, nearly colliding with a bridge guard-rail. Muscha made a second radio call, asking

that a report of the Volvo's near collisions be relayed to authorities. When he saw a North Dakota Highway Patrol car behind him, Muscha pulled onto the shoulder of the road. As the patrol car passed him, Muscha gestured, indicating the blue Volvo to the officer.

When Metheny made his investigative stop of Kettleson, he had had multiple reports of erratic driving relayed to him through state radio, and a description of the vehicle unique to that driven by Kettleson. One of the informants, Muscha, relayed reports of Kettleson driving through the construction zone in a manner which endangered other drivers. *See* NDCC § 39–08–03 [reckless driving]. Muscha also relayed a description of his own vehicle, his intention to follow the Volvo until it was stopped, and when Metheny arrived at the scene, Muscha pointed out Kettleson's car. Considering these circumstances, the trial court could find that a reasonable officer in Metheny's position would suspect Kettleson of criminal conduct, and, therefore conclude that the first investigative stop was proper. *See State v. Davis*, 393 N.W.2d 179 (Minn.1986) [upholding stop of motorist based on tip from informant in face-to-face confrontation with police officer].

Muscha stayed on the scene while Metheny detained Kettleson, and gave a complete statement to West Fargo Police Officer Birrenkott who was also at the scene of the stop. When Metheny finished with Kettleson, he broadcast a report which was heard by West Fargo Police Officer Terry Styf. Birrenkott also gave Styf an account of Muscha's statement when Birrenkott returned to the police station.

Approximately one half hour later, while Muscha was driving west on I–94, he was passed by Kettleson. Muscha stopped and phoned the emergency services number, 911, and reported the fact that Kettleson was still driving. When Muscha later saw Kettleson cross the median, he stopped and made a second report. Officer Styf heard and responded to the attempts of the Cass County Sheriff's Office to dispatch some-

one to investigate the reports of a reckless driver in a blue Volvo. Styf intercepted Kettleson and pulled along side the vehicle which had stopped on an exit ramp. Styf verified the license number from the earlier report, and observed damage to the front of the vehicle, including dirt and grass hanging from the damaged parts, which he felt was consistent with the car being driven through a ditch. Styf asked Kettleson to turn off his engine and to await the arrival of other officers.

Kettleson argues that the second stop was unreasonable because it was based on Muscha's second series of calls and because Muscha had given "unreliable information" earlier in the day. While he does not state his premise, Kettleson appears to argue that the fact Metheny did not find sufficient evidence to charge Kettleson with driving under the influence during the first stop proves that Muscha's report was "unreliable." Muscha's report was that the Volvo was being driven in an erratic and dangerous manner. Muscha saw Kettleson nearly collide with oncoming traffic and a bridge guard-rail; he saw Kettleson drive his vehicle "in a manner so as to endanger or be likely to endanger a[ ] person or the property of another." NDCC § 39–08–03. In addition to identifying himself, describing Kettleson's vehicle with great specificity, and staying at the scene to make a formal statement, Muscha witnessed specific criminal conduct, i.e., reckless driving. Muscha, who testified at the suppression hearing, was a reliable informant.

At the time of the second investigative stop, Styf had the benefit of Muscha's statement respecting Kettleson's near collisions in the construction zone, and Kettleson's admission to Metheny that he was driving in spite of not sleeping for forty hours. Styf also observed evidence that Kettleson had left the roadway, driven into the ditch, and resumed driving on the interstate. Based on these circumstances, the trial court could conclude that a reasonable officer in Styf's position would suspect Kettleson of criminal conduct, and, there-

fore, that the second investigative stop was proper.

The denial of the motion to suppress was proper and, therefore, the judgment of conviction is affirmed.

ERICKSTAD, C.J., and MESCHKE and JOHNSON, JJ., concur.

LEVINE, J., concurs in result.