# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 83

Morgan Lies,                                                                                    Appellant

v.

North Dakota Department of Transportation,                              Appellee

No. 20180393

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

REVERSED.

Opinion of the Court by VandeWalle, Chief Justice.

Joseph R. Vetsch, Devils Lake, ND, for appellant.

Michael T. Pitcher, Office of Attorney General, Bismarck, ND, for appellee.

**Lies v. N.D. Dep't of Transportation**
**No. 20180393**

**VandeWalle, Chief Justice.**

[¶1]	Morgan Lies appealed from a district court judgment affirming a Department of Transportation decision suspending his driving privileges for ninety-one days. Lies argues the hearing officer's decision violated his constitutional rights because neither the arresting officer nor the officer who received the tip had a reasonable and articulable suspicion Lies was violating the law prior to being stopped. We conclude the record does not support the administrative officer's conclusion that the vehicle was properly identified prior to being stopped. We reverse.

I

[¶2]	An off-duty officer, Laite, saw a vehicle driving erratically from Ed's Bait Shop on Highway 20 in Devils Lake and reported it to the Highway Patrol. On-duty officer Mlynar handled the tip, which identified the vehicle only as a "white HHR." Laite did not report a license plate number, description of the driver, or provide ongoing location information. Within half an hour, Mlynar began watching a white HHR and told another officer, Rodriquez, about the tip while surveilling the vehicle in a McDonald's drive-thru. Shortly after, Mlynar lost track of the vehicle on Highway 2. Approximately fifty-five minutes after Laite's tip, Rodriquez encountered a white HHR on Highway 2. Mlynar instructed Rodriquez to stop the vehicle. Lies was the driver of the white HHR Rodriquez stopped. After failing field sobriety tests and an initial screening test, Lies was arrested for driving under the influence. Lies' Intoxilyzer breath test result was 0.12 percent.

[¶3]	At the administrative hearing, the hearing officer determined the central issue was whether Mlynar had a reasonable and articulable basis to direct Rodriquez to stop Lies' vehicle. Rodriquez testified she did not observe any traffic violations or erratic driving and her sole reason for stopping Lies' vehicle was the off-duty officer's

1

earlier report. The hearing officer determined there was no evidence Mlynar could corroborate erratic driving through his own observation or that he directly observed any illegal activity. However, because Laite was a reliable source of information, Mlynar located a white HHR in the general vicinity of the tip within half an hour, and there was "no evidence the sighting of white HHRs is a common occurrence," the hearing officer determined Mlynar had reasonable suspicion to stop Lies' vehicle. Lies' driving privileges were suspended for ninety-one days. Lies appealed the hearing officer's decision to the district court, which affirmed the suspension.

## II

[¶4]     Lies argues the tip that a white HHR was driving erratically, without additional identifying information, did not provide reasonable suspicion to stop his vehicle. "The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of an administrative decision suspending or revoking a driver's license." *Crawford v. Director, N.D. Dep't of Transp.*, 2017 ND 103, ¶ 3, 893 N.W.2d 770. Under N.D.C.C. § 28-32-49, we review an appeal from a district court judgment in an administrative appeal in the same manner as provided under N.D.C.C. § 28-32-46, which requires a district court to affirm an agency order unless it finds any of the following:

> 1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
> 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Koehly v. Levi*, 2016 ND 202, ¶ 15, 886 N.W.2d 689; N.D.C.C. § 28-32-46.

[¶5] "Unreasonable search and seizures are prohibited by the Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, and by Article 1, § 8 of the North Dakota Constitution." *State v. Fasteen*, 2007 ND 162, ¶ 6, 740 N.W.2d 60. An officer must have a reasonable and articulable suspicion that a motorist has violated or is violating the law in order to legally stop a vehicle. *State v. Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538. "Mere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice." *City of Minot v. Keller*, 2008 ND 38, ¶ 6, 745 N.W.2d 638. We use an objective standard and look to the totality of the circumstances when reviewing whether an investigative stop is valid. *State v. Olson*, 2007 ND 40, ¶ 11, 729 N.W.2d 132.

[¶6] This Court does not make independent findings of fact or substitute its judgment for that of the agency; rather, we determine only whether a reasoning mind reasonably could have concluded the agency's findings were supported by the weight of the evidence from the entire record. *Crawford*, 2017 ND 103, ¶ 4, 893 N.W.2d 770. Once the facts are established, their significance presents a question of law, which this Court reviews de novo. *Id*. We review claimed violations of constitutional rights de novo. *Id*.

[¶7] We examine all information known to the officer at the time of the stop and consider inferences and deductions an investigating officer would make which may elude a layperson. *State v. Mohl*, 2010 ND 120, ¶ 7, 784 N.W.2d 128. In its decision, a hearing officer can draw reasonable inferences from the evidence presented using common sense and experience. *Schock v. North Dakota Dep't of Transp.*, 2012 ND 77, ¶ 19, 815 N.W.2d 255. However, the moving party bears the burden of proving their case. *Morrell v. North Dakota Dep't of Transp.*, 1999 ND 140, ¶ 14, 598 N.W.2d 111.

[¶8] Here, the administrative hearing officer stated "[t]here is no evidence the sighting of white HHRs is a common occurrence, such as seeing a white pickup would be." However, neither party presented evidence at the administrative hearing regarding whether white HHRs are a common vehicle. The burden was on the

Department, not Lies, to prove the officers in this case had probable cause to stop Lies' vehicle. Until the Department enters evidence showing HHRs are not a common vehicle, the burden does not shift to Lies. *See Thorsrud v. Director, N.D. Dep't of Transp.*, 2012 ND 136, ¶ 10, 819 N.W.2d 483 (explaining defendant's burden after prima facie evidence is entered). Because the hearing officer received no evidence on the issue, the hearing officer's conclusion that white HHRs are not a common vehicle is not supported by a preponderance of the evidence. It was improper for the hearing officer to rely on an unsupported conclusion to decide the officers had reasonable suspicion to stop Lies' vehicle.

### III

[¶9]    Additionally, Mlynar began watching a white HHR within half an hour of Laite's tip. Only a vague description of the color and model of a vehicle is not enough for a positive identification. *See State v. Neis*, 469 N.W.2d 568, 570 (N.D. 1991) (reasonable suspicion present where caller described pickup by color, high antenna, license number, identified its location, described the erratic driving, and gave her name); *State v. Miller*, 510 N.W.2d 638, 644 (N.D. 1994) (reasonable suspicion not present where caller gave general type, direction, and license number of the vehicle but misidentified its color and only gave some indication about possible criminal activity); *Anderson v. Director, N.D. Dep't of Transp.*, 2005 ND 97, ¶ 19, 696 N.W.2d 918 (reasonable suspicion not present where easily identifiable informant reported license plate number, color, and make of vehicle but dispatcher did not tell officers suspect hit cones in construction zone). A "mere hunch" that Lies' vehicle was the one Laite saw "is not enough to justify the detention of a motorist." *Kappel v. Director, N.D. Dep't of Transp.*, 1999 ND 213, ¶ 7, 602 N.W.2d 718.

[¶10]  This case is distinguishable from other cases where we have found a limited amount of information sufficient to properly identify a vehicle. In *State v. Bryl*, a gas station attendant called in a suspected drunk driver at 2:35 a.m. but did not identify the vehicle by color or license plate number. 477 N.W.2d 814, 816 (N.D. 1991).

4

Instead, the attendant told police the vehicle was parked in the gas station parking lot, stated the vehicle was a pickup, and described the driver as being intoxicated. *Id.* at 815. An officer arrived at the scene two minutes later and observed a pickup just leaving the lot. *Id.* at 816. In finding the officer had articulable suspicion to pull the vehicle over, this Court relied on the officer's arrival on the scene within two minutes of the tip. Based on the quick response time, the only other vehicle in the parking lot being known to belong to a gas station employee, and the late hour, this Court held "it was reasonable to determine that the pickup leaving the lot was the pickup in question." *Id.* at 817.

[¶11]   Here, it is unclear from the record when Mlynar began watching a white HHR. The record only establishes that within half an hour of the tip, Mlynar was surveilling a white HHR in the McDonald's drive-thru. Approximately half an hour later, after Mlynar lost the surveilled vehicle on Highway 2, Rodriquez pulled up behind a white HHR on Highway 2. Mlynar instructed Rodriquez to stop the vehicle. Rodriquez testified there was no way of knowing the vehicle she stopped was the same white HHR from Laite's tip. Unlike *Bryl*, where the officer responded within two minutes and stopped a vehicle at the location provided in the vague tip, officers in this case did not stop the vehicle for almost an hour after the tip. Even though Mlynar was observing a white HHR within half an hour of the tip, the record does not provide evidence of when or where that surveillance began. Based on the record, the basic description provided by Laite did not allow for officers to properly identify the vehicle as the one reported in the tip. Because officers could not reasonably identify the vehicle, reasonable articulable suspicion did not exist to support stopping Lies' vehicle.

IV

5

[¶12]   We reverse the district court's judgment.

[¶13]   Gerald W. VandeWalle, C.J.
        Jon J. Jensen
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte