STATE of North Dakota, Plaintiff and Appellee,

v.

Ernest LYKKEN, Defendant and Appellant.

Crim. No. 1207.

Supreme Court of North Dakota.

May 28, 1987.

Maureen White Eagle, City Atty., Devils Lake, for plaintiff and appellee.

Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant; argued by Thomas L. Trenbeath.

GIERKE, Justice.

Ernest Lykken appeals from a county court judgment convicting him of driving under the influence of alcohol in violation of a local ordinance. We affirm.

At approximately 6:15 a.m. on September 7, 1985, Clay Sorenson, a district engineer with the North Dakota State Highway Department, was driving east on U.S. Highway 2 east of Devils Lake when he noticed a vehicle proceeding westerly in the eastbound roadway. Sorenson, by flashing his lights, attempted to alert the driver that he was traveling in the wrong direction. Sorenson followed the vehicle, and when it came to a stop in a parking lot he walked over and informed the driver that he had been traveling in the wrong direction on the roadway. Sorenson detected that the driver's speech was slurred and formed the opinion that the driver may be "impaired." Sorenson observed that the vehicle was a dark colored "sporty car" with license plate designation "PETE1." He then contacted the state radio dispatcher to whom he described the vehicle and indicated that he had observed the vehicle proceeding in the wrong direction on Highway 2 and that the driver may be alcohol impaired.

At that time Ted Rainesalo, a police officer with the Devils Lake Police Department, was on duty. The dispatcher informed Rainesalo that the driver of a black sports car with license number "PETE1" may be alcohol impaired. As Rainesalo proceeded in his vehicle to investigate the situation he sighted Sorenson's vehicle. Rainesalo, who had previously met Sorenson, stopped to talk with him. Although Rainesalo's testimony demonstrates that he could not remember exactly what their conversation involved, he testified that Sorenson described the vehicle and license number of the car, that Sorenson stated the driver of the vehicle might be impaired, and that Sorenson advised him that the vehicle had been proceeding in the wrong lane of traffic. Based upon that information Rainesalo located and stopped Lykken's vehicle. Officer Rainesalo observed that Lykken's speech was slurred, that his eyes were bloodshot, and that he smelled of alcohol. At Officer Rainesalo's request Lykken performed certain field sobriety tests, and in Rainesalo's opinion Lykken "failed all tests." Rainesalo then placed Lykken under arrest for DUI.

Prior to trial Lykken moved to suppress the results of a breathalyzer test on the ground that Rainesalo's initial stop was "illegal." The trial court denied the motion to suppress and Lykken was subsequently convicted.

On appeal Lykken asserts that under the circumstances of this case Officer Rainesalo did not have a reasonable basis upon which to make a valid stop of Lykken's vehicle. We disagree.

An officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to make a legal investigative stop of a vehicle. *Neset v. North Dakota State Highway Comm'r,* 388 N.W.2d 860 (N.D.1986); *State v. Placek,* 386 N.W.2d 36 (N.D.1986). We employ an objective standard in the determination of the validity of a stop, taking into account inferences and deductions that an investigating officer would make that may elude laypersons. *State v. VandeHoven,* 388 N.W.2d 857 (N.D.1986). The factual basis for stopping a vehicle need not arise from the officer's personal observations, but may arise by information acquired by the officer from another person. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In this case we believe the testimony clearly demonstrates that Officer Rainesalo had a reasonable basis, supported by specific and articulable information, upon which to stop Lykken's vehicle. Officer Rainesalo received an accurate description of Lykken's vehicle from the radio dispatcher including the license plate number of the vehicle together with indications that the driver was possibly alcohol impaired. Before stopping Lykken's vehicle Rainesalo also had a face-to-face conversation with the informant, Sorenson, who had personally observed Lykken's inappropriate driving. Although Rainesalo could not remember the details of the conversation that occurred between himself and Sorenson, he testified that Sorenson told him that he had talked to the driver of the vehicle and believed him to be alcohol impaired and that the driver had been traveling in the wrong lane of traffic.

Sorenson also testified. He stated that he told Officer Rainesalo that he had observed Lykken's vehicle proceeding in the wrong direction on the highway and that it was his opinion the driver "may be under the influence." Lykken asserts that Sorenson's testimony in this regard is irrelevant. We disagree. Sorenson's testimony is relevant to and corroborative of Officer Rainesalo's testimony regarding their conversation and the knowledge Rainesalo possessed when he stopped Lykken's vehicle.

The case of *State v. Davis,* 393 N.W.2d 179 (Minn.1986), presents a similar factual situation in which the Minnesota Supreme Court held that the police officer had reasonable cause to stop the vehicle in question. In that case an officer was sitting in his vehicle at an intersection when a female passenger from another vehicle moving slowly by leaned out the window and shouted, "the car behind just ran the red light!" as she motioned toward a red Ford Maverick. The officer then followed and stopped the Maverick and subsequently arrested its driver for DUI. The Minnesota Supreme Court concluded that the officer's stop of the vehicle was legal:

> "We conclude that the stop in this case was legal.... [H]ere there was, however brief, a face-to-face confrontation between the tipster and the officer.... Clearly, either the informant or the driver had seen the car in question drive through the red light. Under the circumstances, we conclude ... that the officer was as justified in stopping the car to investigate the violation as if he himself has [sic] seen the violation." 393 N.W.2d at 181.

In this case, as in *Davis, supra,* the officer had a face-to-face conversation with the informant who had observed Lykken's vehicle traveling in the wrong lane of traffic and who had spoken with and observed Lykken in the vehicle. Under these circumstances we conclude that Rainesalo had a reasonable basis upon which he made a proper and valid stop of Lykken's vehicle.

In accordance with this opinion the judgment of conviction is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.