**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Larry David NEIS, Defendant and Appellant.**

**Cr. No. 900349.**

Supreme Court of North Dakota.

May 7, 1991.

As Corrected May 10, 1991.

Robin Huseby (argued), States Atty., Courthouse, Valley City, for plaintiff and appellee.

Weiss, Wright, Paulson & Merrick, Jamestown, for defendant and appellant; argued by James A. Wright.

MESCHKE, Justice.

Larry David Neis appeals his conviction of driving while under the influence of alcohol, arguing that the intoxilyzer test should have been suppressed because the arresting officer did not have a reasonable suspicion to stop him. We affirm.

On a summer evening in 1990, two Barnes County residents were driving home on a rural highway. For nearly three miles they followed a pickup driven by Neis. The pickup was traveling erratically—accelerating, then decelerating, and weaving both over the center line and onto the right shoulder of the road. As the driver of the following vehicle pulled into the left lane and attempted to pass, Neis's pickup swerved toward the left lane and then accelerated.

When they reached her home, the driver, Carla Burchill, called the Barnes County Sheriff's office and reported an apparent drunk driver. In addition to describing the vehicle and giving its license number, written down by her passenger, Burchill reported that the pickup was "swaying across the road." Burchill's tip was radio dispatched to Highway Patrolman Haga. Although the dispatcher knew the caller's identity, Haga was not given her name. The dispatcher's report listed only the tip of a possible drunk driver without identifying the caller.

Haga left Interstate 94 and drove north on Highway 32 toward the pickup's reported location. About twenty minutes after receiving the tip, Haga met the southbound brown pickup with the high antenna described by the dispatch. This was only two miles from the pickup's last reported location. As Haga approached it, the pickup veered suddenly and sharply away from the center line. Haga turned and followed the pickup for about three miles on a dusty, gravel road where Haga's view of the pickup was sometimes obscured. Although Haga saw no more unusual driving, nor any violations, he then stopped Neis. After performing field sobriety tests, Haga arrested Neis for violating NDCC 39–08–01 by driving while under the influence of intoxicating liquor. An intoxilyzer test of Neis reported a .21 per cent blood alcohol concentration.

Neis moved to suppress the intoxilyzer test report on grounds that Haga did not have an articulable and reasonable suspicion for the stop. Neis argued that the informant was anonymous, that the tip was unreliable, and that Haga had not confirmed suspicious driving nor seen any traffic violations.

At the suppression hearing, the State's first witness was Carla Burchill, the informant that Neis insists was anonymous. She testified about reporting the incident to the dispatcher, including her description of the pickup, its location, and its erratic travel. Patrolman Haga testified about the information dispatched to him, his surprise at finding Neis's pickup so near its reported location, and his perception of the pickup's "quick movement to the right ... that I've seen other vehicles with impaired drivers do...."

The trial court denied suppression, recognizing that the basis for the stop was "not real strong" and "a little weak here." The trial court reasoned that Haga's articulation of Neis's "abrupt turn away from the center line ... would be some type of an indicia of an impaired driver." The trial court concluded that "if you couple the report by the citizen along with what [Haga] saw, I think it's a reasonable and articulable ... suspicion to make the stop." Neis appeals.

■ The law of investigative stops of automobiles is clear. "[A]n officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to legally stop a vehicle." *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986). *See also State v. Indvik*, 382 N.W.2d 623, 627 (N.D.1986) ("The standard is an objective one. The question is whether or not a reasonable person in the officer's position would be justified by some objective manifestation to suspect the [driver] was, or was about to be, engaged in criminal activity").

Neis relies on *City of Minot v. Nelson*, 462 N.W.2d 460 (N.D.1990) to argue that because Haga did not know the informant, he could not rely on her tip. Neis misreads *Nelson*. In *Nelson*, a truly anonymous informant "indicated that there was a car running in front of a trailer and that the person was suspicious because the car didn't belong there." 462 N.W.2d at 461. We ruled that "the information received from the anonymous informant gives absolutely no indication of the basis for identifying possible criminal activity." *Id.* at 462. Here, in contrast, Burchill identified herself, described the pickup and apparent criminal activity, and explained why ("swaying across the road"). Although the dispatcher chose to record her call without naming her, there certainly are indicia of reliability here, rather than the deficiencies of "complete lack of even the most minimal indicia of reliability of either the informant

or of the information" that controlled in *Nelson.* 462 N.W.2d at 462. *Nelson* does not save Neis.

■ Basing a stop only on information supplied by an informant requires that the information "be sufficiently reliable to support a reasonable suspicion of unlawful conduct." *Wibben v. North Dakota State Highway Commissioner,* 413 N.W.2d 329, 331 (N.D.1987). *See also Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *Nelson,* too, 462 N.W.2d at 462, recognizes that information from an anonymous informant, alone, may justify an investigative stop if it is "sufficiently reliable to support a reasonable suspicion of unlawful conduct." We have held before that an anonymous tip, together with the officer's own observations, is sufficient for a reasonable suspicion. *State v. Lange,* 255 N.W.2d 59 (N.D.1977). Here, Haga's information and observations combined for an articulable suspicion that the trial court concluded was reasonable.

■ Even if Burchill had been unknown to the sheriff's department, her information was more than conclusory. Not only did she describe the pickup by its color, high antenna, and license number, but also she identified its location, described the erratic driving of a drunk driver, and gave her name to the sheriff's office. The fact that the officer making the stop did not know who she was does not make the tip worthless. *See State v. Rodriguez,* 454 N.W.2d 726, 729 n. 2 (N.D.1990) ("[L]aw enforcement officers must be allowed to rely upon information received from other officers").

Neis also argues that the tip is unreliable because of the time-distance incongruity, since the pickup apparently travelled only 2 miles in 20 minutes after the tip. This ignores the many plausible explanations. Neis and his passenger were described by Burchill as "having a good time," and they may have simply stopped to talk, to drink, or even to relieve themselves. Absent contradictory evidence, speculation about Neis's delay en route does not refute Burchill's detailed tip. The confirmable information in the tip enabled the officer to reasonably rely on it.

■ Neis also argues that Haga's observations of Neis's driving gave no adequate reason for an articulable suspicion of wrongdoing. He urges that a stop must be based on an investigative officer's observations of either a traffic violation or erratic driving, and claims that Haga did not see either element. We ruled in *Lange* that an officer "who has been alerted to a possible DWI suspect and who observes the vehicle wandering in its lane of traffic need [not] wait for the driver to commit a traffic offense or become involved in an accident before he has probable cause to stop the vehicle." 255 N.W.2d at 63. *See also State v. Dorendorf,* 359 N.W.2d 115, 116 (N.D.1984) (Accused's "smooth, continuous weaving within [his own] lane of traffic" justified stop to investigate whether driver was tired, had equipment problems, or is under the influence of alcohol). In *State v. VandeHoven,* 388 N.W.2d 857 (N.D.1986), the arresting officer saw an initial erratic movement but no additional unusual driving while following the vehicle some distance thereafter. Affirming VandeHoven's conviction, we stated that "[w]e employ an objective standard in the determination of the validity of a stop, taking into account inferences and deductions that an investigating officer would make that may elude laypersons." *Id.* at 858 (citing *Indvik,* 382 N.W.2d 623). Those precedents guide us here.

Haga saw Neis's pickup veer suddenly and sharply when their vehicles met. Although the pickup's movement did not constitute a traffic violation, it struck Haga's experienced eyes as the kind that "impaired drivers do." Coupled with the information supplied by Burchill, Haga had an articulable and reasonable suspicion to investigate.

In *VandeHoven,* we also considered subsequent non-suspicious behavior. "Once a reasonable suspicion has been formed, subsequent actions which do not enhance the suspicion are irrelevant to a reasonably prompt stop of a vehicle." 388 N.W.2d at 859. Even experienced officers may need time to absorb information and to reflect

on its implications. *See Geiger v. Backes,* 444 N.W.2d 692, 693 (N.D.1989). The fact that an officer followed a driver for a few miles before stopping him does not always negate suspicion, although it may be an evidentiary consideration in some cases. In the totality of these circumstances, we believe the trial court fairly found that Haga had an articulable and reasonable suspicion to stop Neis.

Because the stop was lawful, the evidence of the intoxilyzer test obtained after the stop need not be suppressed. We affirm Neis's conviction.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.