STATE of North Dakota, Plaintiff and Appellee,

v.

Dallas GUTHMILLER, Defendant and Appellant.

Cr. No. 920314.

Supreme Court of North Dakota.

April 27, 1993.

Robert A. Freed (argued), Asst. State's Atty., Jamestown, for plaintiff and appellee.

James A. Sanchez–Wentz (argued), Jamestown, for defendant and appellant.

MESCHKE, Justice.

We consider whether an officer had an articulable and reasonable suspicion to investigate Dallas Guthmiller. We hold that the officer did, and we affirm Guthmiller's conviction for driving under the influence of alcohol.

At 7:15 p.m. on April 25, 1992, Deputy Sheriff Sergeant Bradley Kapp received a dispatch from the state radio operator, saying that an anonymous caller had reported "a DUI driver." The tip described a light blue pickup, the license number, and its eastbound direction on Interstate 94. Kapp drove Highway 10 from Cleveland to Interstate 94, and headed east on the interstate highway. As he entered Interstate 94, he saw a light blue pickup in his rearview mirror. The pickup was leaving Interstate 94 on the eastbound exit ramp.

Kapp turned through the median, heading back in the westbound lane. As he went under the bridge over Interstate 94, he saw the blue pickup stopped at the stop sign at the exit intersection. At no time did Kapp see any erratic driving. Kapp again turned through the median, crossed the eastbound lane, and drove up the eastbound exit ramp. As he came toward the pickup, he confirmed that it had the reported license number.

Kapp paused behind the pickup for a few seconds to see whether it would move. When it did not, Kapp turned on his amber flashers and got out of his patrol car. Guthmiller stepped out of his pickup at nearly the same time. Kapp noticed that Guthmiller staggered. "He ... had to use his ... pickup for support—at this point,"

Kapp testified. When Kapp spoke to Guthmiller about his driver's license, Kapp detected a strong odor of alcohol and slurred speech. Guthmiller insisted that he was not driving, asserted that "he was stopped," and declined to perform field-sobriety tests.

Kapp arrested Guthmiller for driving under the influence. Guthmiller also refused a blood-alcohol test.

At a trial without a jury, Guthmiller's main defense was that the officer had no articulable and reasonable suspicion to justify the investigation. The trial court recognized that a challenge to an unlawful seizure would ordinarily have been waived unless heard and decided on a timely motion to suppress evidence under N.D.R.Crim.P. 12(b). Still, the court ruled that the prosecution was not prejudiced by the delayed motion in this case, and decided the question. Reasoning from *State v. Neis*, 469 N.W.2d 568 (N.D.1991), the court ruled that Kapp had an articulable and reasonable suspicion "because [Guthmiller] stopped at a stop sign and didn't move. He remained there." The trial court decided that Guthmiller's prolonged stop was the "something more" independent of the anonymous tip that made it reasonable for the officer to investigate whether the driver was "out of gas," having a "[m]echanical failure," or ill, if not driving under the influence.

Despite the lack of a blood-alcohol test, the trial court concluded that there was "ample evidence" that Guthmiller was driving under the influence of alcohol, and convicted him. Guthmiller appeals, arguing that since Kapp saw no erratic driving or violation of law, there was no articulable and reasonable suspicion for Kapp to investigate him.

Because the notice of appeal was filed one day late, we had no jurisdiction. On Guthmiller's motion at oral argument, we remanded to the trial court to determine whether there was excusable neglect under N.D.R.App.P. 4(b)(3) and N.D.R.Crim.P. 37(b)(3) to extend the time for appeal. *State v. Guthmiller*, 497 N.W.2d 407 (N.D. 1993). The trial court has ruled that excusable neglect extended the time for appeal,

and we now have jurisdiction to decide the merits.

■ Our constitutions guarantee people the right to be secure from unreasonable searches and seizures. U.S. Const. amend. IV; N.D. Const. art. I, § 8. For that reason, an officer must have an articulable and reasonable suspicion that a law has been or is being violated to stop a moving vehicle for investigation. *State v. Neis*, 469 N.W.2d 568, 569 (N.D.1991). Thus, an officer cannot stop a moving vehicle to investigate who the driver is or why he had been reported parked in a residential neighborhood shortly before, without any suspicion of unlawful conduct. *City of Minot v. Nelson*, 462 N.W.2d 460 (N.D.1990). As explained in *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981), an investigative stop of a moving vehicle "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."

■ The tip described the pickup by its color, direction, and license number. The fact that the officer acting on the information does not know the identity of the tipster does not make the information valueless. *Neis*, 469 N.W.2d at 570. The factual basis for a stop need not arise from the officer's personal observations alone, but can arise from information furnished by others. *State v. Hornaday*, 477 N.W.2d 245, 246 (N.D.1991); *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 332 (N.D.1987) ("Upon corroborating other details of the anonymous tip, we believe that this officer had sufficient information for a reasonable suspicion, particularly when we take into account inferences and deductions that an investigating officer would normally make."); *State v. Lykken*, 406 N.W.2d 664, 666 (N.D.1987); *State v. Boushee*, 284 N.W.2d 423, 430 (N.D.1979); *State v. Lange*, 255 N.W.2d 59, 63 (N.D. 1977). Kapp confirmed the color, direction, and license number of the pickup before investigating why it was stopped so long.

Guthmiller argues that his pause did not furnish any reason to investigate him. He says that his "hesitation at the stop sign

for a few seconds was no indication of unlawful activity, but a typical reaction to having a law enforcement officer come up behind him." Guthmiller claims that he paused only a "few seconds." The prosecution says that it was longer, explaining: "[T]he exit ramps for the Interstate are not exceedingly long. However, the pickup was still stopped at the stop sign while Kapp slowed down, crossed the median, drove on the westbound lane underneath the bridge, drove again through the median, drove across the eastbound lane of Interstate 94 and up the exit ramp.... In fact, Kapp waited a couple of seconds while he was stopped behind [Guthmiller's] vehicle waiting for him to move."

■ Whatever the duration of Guthmiller's pause at the stop sign, the trial court ruled that, since he "didn't move" and "remained there," "some investigation should take place." *See* NDCC 39–10–47(1) ("Upon any highway outside of a business or residence district no person may stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway,...."). In *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992), we said that an officer may learn something during a caretaking or casual encounter with a parked car that will reasonably justify further investigation, a seizure, or even an arrest. *See Wibben* (checking an occupied car parked in an apartment parking lot). We believe that, combined with the tip information, Guthmiller's "hesitation" at the stop sign was long enough to reasonably justify investigation.

A trial court's decision of a suppression motion will be affirmed if, after conflicts in the evidence are resolved in favor of affirming, there is sufficient competent evidence for the decision. *State v. Bryl*, 477 N.W.2d 814, 816 (N.D.1991). *Bryl* reminds us, too, that this standard of review defers to the trial court's superior opportunity to weigh the evidence and to judge the credibility of the witnesses. We conclude that there was sufficient evidence for the trial

court to find that the officer had an articulable and reasonable suspicion to investigate Guthmiller.

We affirm Guthmiller's conviction.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, Justice, concurring in the result.

I agree that Guthmiller's prolonged stop at the stop sign was sufficiently corroborative of the anonymous tip that he was driving under the influence to justify the stop made by the law enforcement officer. In other words, the tip and the stop provided the officer with an articulable and reasonable suspicion that the person stopped was, or was about to be, engaged in criminal activity. I, therefore, concur in the affirmance.

I do not agree with the majority's reference to a "caretaking or casual encounter with a parked car" that would justify further investigation, seizure or arrest. It is an unnecessary piece of legal analysis because our decision is not based on it. Having said that, I want to emphasize that a stop made for exercising a caretaking function or casual encounter is subject to the reasonable suspicion standard when the officer is also engaged in crime detection. *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 331 n. 1 (N.D. 1987). Nor do I believe that Guthmiller's pause at the stop sign, without the anonymous tip, would be sufficient to constitute either reasonable suspicion or trigger any caretaking duty on the part of a law enforcement officer. A momentary delay at a stop sign does not give a law enforcement officer the right to confront the driver. After all, the Fourth Amendment seeks to minimize governmental confrontations with the individual. *United States v. Dunbar*, 470 F.Supp. 704 (D.Conn.1979).

I concur in the result.