STATE of North Dakota, Plaintiff and Appellee,

v.

Rodney MILLER, Defendant and Appellant.

Cr. No. 930206.

Supreme Court of North Dakota.

Jan. 18, 1994.

---

Ralph A. Vinje of Vinje Law Firm, Bismarck, for defendant and appellant.

Bruce B. Haskell, Asst. State's Atty., Bismarck, for plaintiff and appellee.

LEVINE, Justice.

Rodney Miller appeals from a judgment of conviction of driving or being in actual physical control of a motor vehicle under NDCC § 39–08–01(1)(a) and (b). Miller questions whether the investigating officer had a reasonable and articulable suspicion to stop his vehicle. We hold that the officer did not and reverse.

Shortly before midnight on June 22, 1992, the Bismarck Police Department dispatcher notified Officer James Chase that a caller had reported a possible drunk driver in the Wendy's drive-up lane. The caller identified himself to the dispatcher as "Jody with Wendy's," but the dispatcher did not tell Chase the caller was identified, either by name or his employment. The dispatcher described the vehicle as a red pickup and gave its license plate number and location as second in line in the drive-up lane. The dispatcher also relayed the informant's statement that the driver "could barely hold his head up." Chase was about a mile away from Wendy's and arrived there in a matter of minutes. Chase saw an orange pickup coming out of the drive-up lane. The pickup pulled out of the Wendy's parking lot and drove east on Capitol. Chase followed the pickup as it drove north on the frontage road in front of Wendy's at about five to seven miles per hour, and then turned into the Wendy's parking lot and parked. Chase verified that the pickup's license number matched the number reported by the dispatcher, but did not notice anything unusual about the pickup's driving. Chase pulled in behind the pickup and turned on his warning flashers. He then conducted field sobriety tests on Miller and arrested him.

Miller was charged with driving or being in actual physical control of a motor vehicle under NDCC § 39–08–01(1)(a) and (b). Miller moved to suppress the evidence gained as a result of the stop on the ground that Chase did not have a reasonable and articulable suspicion of a violation at the time of the

stop. He also argued that NDCC § 29–29–21 implicitly requires probable cause to stop a driver suspected of impaired driving. The trial court denied the motion, finding that the information available to Chase at the time of the stop was sufficient to support a reasonable and articulable suspicion. It also determined that NDCC § 29–29–21 does not apply to stops for alcohol-related offenses. Miller pleaded guilty to the charge, reserving his right to appeal from the trial court's order denying his motion to suppress. The trial court sentenced Miller to a one-year term of imprisonment, which it suspended in part, and ordered him to pay a fine. Miller now appeals.

The dispositive issue on appeal is whether the trial court erred in finding that the facts were sufficient to support a reasonable and articulable suspicion. We resolve the issue by applying the analytical framework within to determine whether the tip is reliable enough to raise a reasonable suspicion without corroboration by the officer of suspicious behavior.

■ We will affirm a trial court's decision on a suppression motion if, after resolving conflicts in the evidence in favor of affirming, we find sufficient competent evidence for the trial court's decision. *State v. Guthmiller,* 499 N.W.2d 590 (N.D.1993); *State v. Bryl,* 477 N.W.2d 814 (N.D.1991). Under this standard of review, we defer to the trial court's superior opportunity to weigh the evidence and to judge the credibility of the witnesses. *Guthmiller, supra; Bryl, supra.*

■ To make a legal investigative stop of a vehicle, an officer must have a reasonable and articulable suspicion that the motorist has violated or is violating the law. *E.g., Wibben v. North Dakota State Highway Comm'r,* 413 N.W.2d 329 (N.D.1987). Information from a tip may provide the factual basis for a stop. *State v. Neis,* 469 N.W.2d 568 (N.D.1991). In evaluating the factual basis for a stop, we consider the totality of the circumstances. *E.g., Geiger v. Backes,* 444 N.W.2d 692 (N.D.1989). This includes the quantity, or content, and quality, or degree of reliability, of the information available to the officer. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301

(1990). Although the totality-of-the-circumstances approach makes categorization difficult, our cases involving reasonable suspicion arising from an informant's tip demonstrate the inverse relationship between quantity and quality, and may be analyzed generally according to the type of tip and, hence, its reliability. As a general rule, the lesser the quality or reliability of the tip, the greater the quantity of information required to raise a reasonable suspicion. *Id.* at 330, 110 S.Ct. at 2416.

### 1. Face-to-face Informants

The most reliable tip is the one relayed personally to the officer. In *State v. Lykken,* 406 N.W.2d 664 (N.D.1987), in a face-to-face conversation between the officer and an informant known to the officer, the informant gave the officer a description and the license number of the vehicle, and told the officer that he thought the driver might be impaired because he had seen the vehicle driving the wrong way on the highway. We held that the information provided by the tip itself was sufficient to raise a reasonable and articulable suspicion. We based our decision in part on *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), in which the Supreme Court reached a similar holding. In *Adams,* an informant known to the officer approached the officer and told him that Williams, seated in a nearby car, was carrying narcotics and a gun. Based on the tip, the officer conducted a stop and frisk of Williams. Williams argued that the reasonable suspicion standard required some corroboration of the tip. The Court, relying on the facts that the officer knew the informant and the informant had come forward personally, disagreed. It stated,

"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of relia-

bility, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response." Id. at 147, 92 S.Ct. at 1924.

These cases illustrate the high end of the reliability scale: the quality of the information, provided in person by an informant known to the officer, was enough so that the quantity of the information provided by the tip alone, that the defendant was engaged in criminal activity, was sufficient to raise a reasonable suspicion.

### 2. Anonymous Informants

At the low end of the reliability scale are tips from anonymous callers. In Wibben, supra, an anonymous caller reported an apparently sick or intoxicated person seated in a car with the engine running in an apartment complex parking lot. The investigating officer found a car in the parking lot matching the tip's description, except that its engine was not running. The officer saw that the driver "was just sitting behind the wheel" and made the stop. Id. at 330. We held that the tip, combined with the officer's corroboration, "including the fact that Wibben continued to be visibly seated in the car," was sufficient to raise a reasonable suspicion. Id. at 332; see also id. at 333 (Levine, J., concurring) ["Only because there was corroboration by the police officer that the car was parked with the driver inside over some duration of time, did the officer have the requisite basis for an investigative stop."]. In State v. Thordarson, 440 N.W.2d 510 (N.D.1989), an anonymous caller reported that "down by Cenex there had been some motorcycles going back and forth and tearing around there." Id. at 511. The officer drove to the Cenex station within a matter of seconds and saw two motorcycles speeding past the station. We concluded that the officer had a reasonable and articulable suspicion to stop Thordarson, one of the motorcyclists: "Although this offi-

cer started with a tip from an anonymous caller, the officer used his own senses to observe Thordarson violating the law by speeding." Id. at 512. In Guthmiller, supra, an anonymous caller reported "a DUI driver." The caller gave the general type, color, direction, and license number of the vehicle, but did not describe any erratic driving or suspicious behavior. The investigating officer saw the vehicle stop for an unusually long time at a stop sign, and the officer confirmed the information given in the tip before making the stop. We held that the combination of the tip and "Guthmiller's 'hesitation' at the stop sign," which we noted was a possible violation of NDCC § 39–10–47(1), was sufficient to raise a reasonable and articulable suspicion. Id. at 592. In City of Minot v. Nelson, 462 N.W.2d 460 (N.D.1990), we held that an anonymous tip about a "suspicious" vehicle, without any indication of possible illegal activity from the informant or the officer's observations, was insufficient to raise a reasonable and articulable suspicion.

The Supreme Court addressed anonymous telephone tips in the reasonable-suspicion context in Alabama v. White, supra. In that case, an anonymous caller told police that "Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." Id. 496 U.S. at 327, 110 S.Ct. at 2414. The officers stopped White after following her most of the way to Dobey's Motel. The Court evaluated the tip according to the quality-quantity analysis:

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' United States v. Cortez, 449 U.S. 411, 417 [101 S.Ct. 690, 694, 66 L.Ed.2d 621] (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will

be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] Court applied its totality of the circumstances approach in this manner, taking into account the facts known to the officers from personal observation and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established." *Id.* 496 U.S. at 330–31, 110 S.Ct. at 2416–17. The Court concluded that at the time of the stop, the officers sufficiently had corroborated the anonymous tip to raise a reasonable suspicion. *Id.* at 331, 110 S.Ct. at 2416. In so holding, the Court focused on the tip's prediction of future behavior:

"We think it also important that, as in *Gates,* 'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' *Id.* [462 U.S.] at 245 [103 S.Ct. at 2335]. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have 'predicted' that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior,* because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. See *id.,* at 245 [103 S.Ct. at 2335]. When significant aspects of the caller's predictions were verified, there was reason

to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* 496 U.S. at 332, 110 S.Ct. at 2417 (alteration in original).

Because anonymous telephone tips are of lesser quality, *i.e.,* reliability, than face-to-face tips or tips from named callers, a larger quantity of information is required to raise a reasonable suspicion. Where the informant makes no prediction of future behavior indicating "inside information—a special familiarity with [the suspect's] affairs" that the police may corroborate, the investigating officer must corroborate an anonymous, and therefore presumably unreliable, tip in some other way. Typically, our impaired driver cases involve tips that give a description and the location of the vehicle—"easily obtained facts and conditions existing at the time of the tip" and available to the general public. Corroboration of this type of information does not increase the reliability of the tip. *See State v. Thompson,* 369 N.W.2d 363 (N.D.1985) [holding that corroboration of facts available to general public was insufficient to establish probable cause]. Therefore, our cases have required that the officer corroborate the tip by observing some behavior on the part of the driver, either illegal or indicative of impairment, that alerts the officer to a possible violation. *See also Wibben, supra* at 332 [stating that an officer's inferences and deductions may constitute part of the basis for reasonable suspicion]. Additionally, with regard to named and anonymous tips, we have held that the number of tips may increase the quality of the tips. *State v. Kettleson,* 486 N.W.2d 227, 228 (N.D. 1992) ["When many apparently unassociated people report the same fact, the probability that the fact is true is increased."].

The question arises whether the dispatcher's knowledge of the identity of the informant, not communicated to the investigating officer, may be imputed to the investigating officer for purposes of assessing the officer's grounds for making a stop. If it cannot, then the tip is anonymous for purposes of reasonable-suspicion analysis.

■ Where one officer relays a directive or request for action to another officer without relaying the underlying facts and circumstances, the directing officer's knowledge is imputed to the acting officer. *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *see also State v. Rodriguez*, 454 N.W.2d 726, 729 n. 2 (N.D.1990). Thus, an officer, who is unaware of the factual basis for probable cause, may make an arrest upon a directive. The rationale for the *Whiteley* rule is that the arresting officer is entitled to assume that whoever issued the directive had probable cause. *Whiteley, supra.* The question then becomes whether the directing officer had probable cause. *Id.; United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The same applies in the reasonable-suspicion context. *See Hensley, supra.* However, in the absence of such a directive, information held by other officers but not communicated to the acting officer is not imputed to the acting officer.

> "*Whiteley* must in turn be distinguished from the case in which there has been no directive or request but the arresting or searching officer attempts to justify his action on the ground that other officers were at that time in possession of the necessary underlying facts. In such circumstances, the knowledge of other police cannot ordinarily be imputed to the arresting or searching officer, for to hold otherwise 'would encourage police officers to search on the hope that the total knowledge of all those officers involved in a case will later be found to constitute probable cause if the search is challenged.'" 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.3(e), at 208 (1984) (quoting *State v. Mickelson*, 18 Or.App. 647, 526 P.2d 583, 584 (1974)).

Some courts have imputed knowledge between officers in the absence of a directive where the officers were working closely together. *See, e.g., United States v. O'Connell*, 841 F.2d 1408, 1418–19 (8th Cir.1988) [upholding stop where acting officer's knowledge did not constitute probable cause but collective knowledge of investigative team present at scene did constitute probable cause, because "the officers had worked closely together during the investigation" and the complexity of an investigation of a drug organization "may preclude a detaining officer from acquiring or consistently maintaining probable cause or a reasonable suspicion of every party under investigation"]. *But see, e.g., People v. Mitchell*, 185 A.D.2d 163, 585 N.Y.S.2d 759, 761 (1992) [refusing to impute knowledge of arresting officer's partner that object defendant had dropped was crack cocaine and stating that police "cannot be considered to have relied on information possessed by each other without there having been any communication of either the information itself or a direction to arrest"].

■ We have found no law to support the proposition that information known to the dispatcher but not communicated to the investigating officer nevertheless should be imputed to the officer. In *Neis, supra* at 569–70, we distinguished *Nelson, supra*, without imputing the knowledge of the dispatcher to the investigating officer:

> "*Neis* relies on [*Nelson*] to argue that because [the dispatcher did not relay the informant's identity to the investigating officer, the officer] could not rely on her tip. Neis misreads *Nelson*. In *Nelson*, a truly anonymous informant 'indicated that there was a car running in front of a trailer and that the person was suspicious because the car didn't belong there.' We ruled that 'the information received from the anonymous informant gives absolutely no indication of the basis for identifying possible criminal activity.' Here, in contrast, [the informant] identified herself, described the pickup and apparent criminal activity, and explained why ('swaying across the road'). Although the dispatcher chose to record her call without naming her, there certainly are indicia of reliability here, rather than the deficiencies of 'complete lack of even the most minimal indicia of reliability of either the informant or of the information' that controlled in *Nelson*." (Citations omitted.)

Although one might argue that this language in *Neis* supports the proposition that information known to the dispatcher but not transmitted to the investigating officer should be imputed to the investigating offi-

cer, we believe *Neis* is read better to distinguish *Nelson* on the basis of the quantity of information provided by the tip rather than the quality, or reliability, of the tip. Accordingly, in the absence of a directive or other circumstances allowing imputation, we do not consider information, known to the dispatcher but not transmitted, at least in summary form, to the stopping officer, in determining whether the officer had a reasonable and articulable suspicion. *Cf. State v. Nelson,* 488 N.W.2d 600, 602 (N.D.1992) [stating that "collective information of law enforcement personnel, known by or transmitted to the stopping officer" is highly relevant in assessing the reasonableness of a stop].[1] Thus, our decisions in *Bryl, supra,* and *Neis, supra,* for purposes of reasonable-suspicion analysis, involved anonymous telephone tips because, in each case, the dispatcher did not relay to the investigating officer the informant's identity or the fact that the tip was from an identified informant.

In *Neis,* a caller reported a pickup "swaying across the road" and gave a description of the pickup, its location, and license number. After verifying the pickup's description and general location, the officer saw the pickup make a "quick movement to the right . . . that [the officer had] seen other vehicles with impaired drivers do" and made the stop. *Id.* at 569. We held that the pickup's movement, coupled with the caller's information, was sufficient to raise a reasonable and articulable suspicion. In *Bryl,* a caller reported that Bryl was intoxicated and sitting in a pickup in a convenience store parking lot. She gave detailed information about Bryl's behavior: that he staggered through the store, smelled of alcohol, paid for his purchase by giving the attendant his entire wallet, and sat in his pickup for twenty minutes. The officer, who was told by the dispatcher that an intoxicated person was in the store's parking lot, and who correctly and reasonably assumed the informant was a convenience store attendant whom he knew, *see Bryl v. Backes,* 477

N.W.2d 809, 812 (N.D.1991), stopped Bryl as he left the parking lot. Although we noted that the record was not clear on how much of the information the dispatcher relayed to the officer, we found the information about Bryl's condition important. *Id.* at 817. Additionally, given the officer's reasonable assumption of the informant's identity, the tip in *Bryl* was more reliable than the usual anonymous tip. Where the tip gave only some indication of possible criminal activity, as it did in *Neis* (the informant reported that the pickup was "swaying across the road"), we required that the officer observe some suspicious behavior in addition to the tip (the "quick movement to the right"). Where the tip gave a greater quantity of information and the officer knew the informant, as in *Bryl,* we did not require an independent observation on the part of the officer, finding the officer's corroboration of the vehicle's location sufficient.

The tip in this case, like the tips in *Neis* and *Bryl,* is anonymous for the purposes of reasonable-suspicion analysis. Here, looking at the quality of the tip, an informant told the police about a possible drunk driver in a pickup, misdescribed the pickup's color, gave its location and license number and described the behavior of the driver. The quality of the tip determines the quantity of information, from the tip and the officer's corroboration, needed to raise a reasonable suspicion. The informant's single, inferential statement that the driver "could barely hold his head up" does not approach the precision of the information provided by the tip in *Bryl;* instead, it is akin to the tip in *Neis* that gave only some indication of possible criminal activity. The *Neis* tip required corroboration of suspicious conduct to meet the requirements of reasonable suspicion. Although Chase confirmed the location and license number of the pickup before making the stop, he did not notice any traffic violations, erratic driving, or anything that he thought was "real unusual." Chase's observations of innocent facts do not meet the

---

1. The dissent's heavy reliance on cases which, themselves, involve or approve of information actually transmitted by law enforcement officers to the stopping officer, lends ample support to our conclusion that *un*transmitted information is irrelevant to a determination of whether an offi-

cer had a reasonable and articulable suspicion. *See United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *State v. Nelson,* 488 N.W.2d 600 (N.D.1992); *State v. Hornaday,* 477 N.W.2d 245 (N.D.1991).

requirement of *Neis* that there be corroboration of suspicious conduct when an anonymous tip, short on reliability, is also short on specifics. We believe that the combination of the anonymous tip and Chase's observations of innocent facts is insufficient to raise a reasonable and articulable suspicion. Accordingly, we find that the trial court's order denying Miller's motion to suppress is not supported by sufficient competent evidence.

Reversed.

SANDSTROM, J., concurs.

VANDE WALLE, C.J., and NEUMANN, J., concur in the result.

MESCHKE, Justice, dissenting.

I respectfully dissent. In denying suppression, the trial court reasoned:

At the suppression hearing testimony was received indicating that the police department had been called by a person at Wendy's after someone in the drive-up portion of the restaurant observed the defendant operating a pickup and appearing to be intoxicated. This information along with a description of the vehicle including license number was communicated to the dispatcher, who alerted Officer Chase. He, within a matter of minutes, approached the Wendy's location and observed what he believed to be the vehicle in question coming out of the drive-thru portion of the restaurant. He observed the vehicle exit Wendy's parking lot onto the service road and then turn into the driveway once again, where he approached the defendant and observed circumstances which led to the decision to make the arrest. The officer had observed no improper operation of the vehicle after he reached the area of Wendy's restaurant. The only information that he had regarding the likelihood that an offense had been committed was the information of an apparently alcohol impaired driver and a description of the vehicle as the same had been transmitted via a Wendy's employee who was unknown at the time.

The defense has a two-pronged approach in attacking the basis for the stop. First, it contends under cases decided by the Supreme Court the information available to the arresting officer was insufficient to allow him to have a reasonable, articu[l]able suspicion of an offense.

Under the standard employed in the case of *State v. Bryl,* 477 N.W.2d 814 (N.D. 1991), I agree with the Municipal Judge and conclude that, although sketchy, the composite of information that the officer had gave him reasonable cause to believe that he had the correct vehicle when he began watching the defendant's pickup, and further, that based on information radioed to him, could conclude that the vehicle contained an impaired driver. Although the truck had been identified as "red," it was in fact orange, a point the defense emphasized at the suppression hearing. The license plate number, however, had been communicated, and the I.D. of the vehicle was assisted as a result of that information.

In *State v. Hornaday,* 477 N.W.2d 245 (N.D.1991), the officer detained the defendant's vehicle based on information he had received via a radio dispatch which contained information that another police officer believed that he had observed a parked car possibly containing individuals consuming alcohol. The Court upheld the trial court's determination that the officer did have a reasonable, articu[l]able suspicion of criminal behavior (consumption of alcohol by minors). The Court cited *Gieger v. Backes,* 444 N.W.2d 692 (N.D.1989), where it held at 247 that, "Law enforcement officers are not required 'to point to a single factor which, standing alone, signals a potential violation of law,' but rather, 'are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity.' "

I agree with the analysis by the trial judge, largely for reasons expressed in *State v. Nelson,* 488 N.W.2d 600, 602–04 (N.D. 1992):

Police may briefly stop an auto to investigate a reasonable suspicion that a driver

may be violating a law, without waiting for an actual violation or an actual injury to someone. *State v. Bryl,* 477 N.W.2d 814, 817 (N.D.1991). An officer need only have enough information for an articulable and reasonable suspicion that the driver has or may be violating the law. *Id.* at 816; *State v. Neis,* 469 N.W.2d 568, 569 (N.D.1991). The information of the stopping officer need not arise from personal observation alone. *Bryl* at 816. Reasons for the suspicion may also come from another person or officer. *Id.* The collective information of law enforcement personnel, known by or transmitted to the stopping officer, must be considered to assess whether a stop is reasonable under the Fourth Amendment. *State v. Rodriguez,* 454 N.W.2d 726, 729 (N.D.1990). These Fourth Amendment signposts guide us here.

On review, we recognize the trial court's superior position to assess the demeanor and credibility of the witnesses, and we defer to that court's factual determinations about searches and seizures, unless those factual determinations are contrary to the manifest weight of the evidence. *Bryl.* *See also State v. Pickar,* 453 N.W.2d 783, 785 (N.D.1990); *State v. Morrison,* 447 N.W.2d 272, 275 (N.D.1989); *State v. Frank,* 350 N.W.2d 596, 599 (N.D.1984). As an appellate court, we do not usually resolve conflicts in the evidence, determine the credibility of explanations, or weigh the evidence.

.        .        .        .        .

. . . Oestreich had a reason to stop Nelson. In *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the United States Supreme Court summarized this view that requires consideration of the collective information communicated among fellow officers.

> Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the investigating officer to rely on fellow officers to make the arrest.

*Whiteley* at 568, 91 S.Ct. at 1037. In *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Supreme Court extended this concept to an investigatory stop, explaining that

> if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information. *See Adams v. Williams,* 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time"). If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit. It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it. Assuming the police make a *Terry* [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, . . . and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.

*Hensley* 469 U.S. at 232–233, 105 S.Ct. at 682. [Some citations omitted]. Further, quoting an apt explanation by the Ninth Circuit Court of Appeals, *Hensley* clarifies

that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.

*Hensley* at 231, 105 S.Ct. at 682. *See also* 1 Wayne R. LaFave and Jerold H. Israel, Criminal Procedure § 3.3(e) (1984). Although we are concerned with a reasonable and articulable suspicion for a stop, not probable cause for the arrest, *Hensley* teaches us that the reason for a stop can be based on information communicated by a fellow officer.

I do not agree that this "tip" was anonymous or unreliable. Other opinions by this court have allowed an officer to credit a similar tip in formulating a reasonable and articulable suspicion. *See State v. Guthmiller,* 499 N.W.2d 590, 592 (N.D.1993):

The tip described the pickup by its color, direction, and license number. The fact that the officer acting on the information does not know the identity of the tipster does not make the information valueless. *Neis,* 469 N.W.2d at 570. The factual basis for a stop need not arise from the officer's personal observations alone, but can arise from information furnished by others. *State v. Hornaday,* 477 N.W.2d 245, 246 (N.D.1991); *Wibben v. North Dakota State Highway Comm'r,* 413 N.W.2d 329, 332 (N.D.1987) ("Upon corroborating other details of the anonymous tip, we believe that this officer had sufficient information for a reasonable suspicion, particularly when we take into account inferences and deductions that an investigating officer would normally make."); *State v. Lykken,* 406 N.W.2d 664, 666 (N.D.1987); *State v. Boushee,* 284 N.W.2d 423, 430 (N.D.1979); *State v. Lange,* 255 N.W.2d 59, 63 (N.D. 1977). Kapp confirmed the color, direction, and license number of the pickup before investigating why it was stopped so long.

As the following quotation shows, this case is more like *State v. Bryl,* 477 N.W.2d 814, 817 (N.D.1991):

Although there was some differing testimony as to what Shelly Rutten told the dispatcher and what the dispatcher relayed to Officer Fix, it is known that the officer was advised that there was an intoxicated subject in a pickup at the Super Pumper station. From the information that Officer Fix had at that time, it was reasonable for him to believe that the pickup leaving the lot was the pickup that contained the intoxicated person. There was an articulable suspicion that the vehicle was being driven by an intoxicated person.

"[I]nformation from an anonymous informant used for an investigative stop must be sufficiently reliable to support a reasonable suspicion of unlawful conduct, though not the more exacting standard of probable cause necessary to make an arrest." *Wibben v. N.D. State Highway Commissioner,* 413 N.W.2d 329, 331 (N.D.1987). *See City of Minot v. Nelson,* 462 N.W.2d 460, 462 (N.D.1990); *State v. Dorendorf,* 359 N.W.2d 115, 116 (N.D.1984). This tip is much like the one in *State v. Neis,* 469 N.W.2d 568 (N.D.1991). In *Neis,* the informant identified herself, the vehicle and the behavior, which was the same information that Shelly Rutten gave to the dispatcher. *Id.* at 569. This information provided certain indications of reliability of both the informant and the information.

*See also State v. Hornaday,* 477 N.W.2d 245 (N.D.1991) (approving brief communications of information between officers, and relied upon by the trial court in this case), and *State v. Neis,* 469 N.W.2d 568 (N.D.1991).

Even if Burchill had been unknown to the sheriff's department, her information was more than conclusory. Not only did she describe the pickup by its color, high antenna, and license number, but also she identified its location, described the erratic driving of a drunk driver, and gave her name to the sheriff's office. The fact that the officer making the stop did not know who she was does not make the tip worthless. *See State v. Rodriguez,* 454 N.W.2d 726, 729 n. 2 (N.D.1990) ("[L]aw enforcement officers must be allowed to rely upon information received from other officers").

*Id.* at 570. In my view, the majority opinion discounts the report of an identified informant too much, and attenuates brief communications between law enforcement officers more than our prior precedents do.

For me, there are enough details in the named informant's tip, including description of specific suspicious conduct of the driver, for reliability; adequate abbreviated communication between officers of information from an identified citizen informant; and reasonable verification of essential details about the identified driver, while that driver was circling out and back into Wendy's driveway, for the officer to formulate a reasonable suspicion to make a minimally intrusive and respectful *Terry* approach to clarify ambiguous conduct in an effort to forestall drunken driving. For these reasons, I respectfully dissent.