# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 27, 2009 Session Heard in Cookeville[1]

## STATE OF TENNESSEE v. JERRY LEE HANNING

**Appeal by Permission from the Court of Criminal Appeals, Eastern Section
Criminal Court for Loudon County
No. 10914  E. Eugene Eblen, Judge**

---

**No.  E2006-02196-SC-R11-CD - Filed October 20, 2009**

---

GARY R. WADE, J., concurring.

I concur, but on a different basis.  "Whether the stop of a vehicle is considered 'reasonable' depends on whether the officer had either probable cause or an 'articulable and reasonable suspicion' that the vehicle or its occupants were subject to seizure for a violation of the law . . . .  The level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause."  State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008).  Reasonable suspicion must be supported "by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Terry v. Ohio, 392 U.S. 1, 21 (1968); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979).  In State v. Day, this Court made the following observation: "Under circumstances where the information forming the basis for a motor vehicle stop is derived from an anonymous informant, Tennessee law requires some showing of both the informant's veracity or credibility and his or her basis of knowledge."  263 S.W.3d at 903 (citing State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993)).  Each of the prongs we discussed in Day must be addressed separately.  State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998); State v. Simpson, 968 S.W.2d 776, 781 (Tenn. 1998).  Nevertheless, "independent corroboration may generally make up any deficiencies in an informant's tip."  State v. Coleman, 791 S.W.2d 504, 507 (Tenn. Crim. App. 1990); see also Adams v. Williams, 407 U.S. 143 (1972); State v. Wilhoit, 962 S.W.2d 482, 487 (Tenn. Crim. App. 1997).[2]

---

[1] Oral argument was heard in this case on May 27, 2009, in Cookeville, Putnam County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2] In State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), this Court rejected the totality of the circumstances test adopted by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1982), holding that the Aguilar-Spinelli standard was more in keeping with the requirement of Article I, section 7 of the Tennessee Constitution limiting searches and seizures "without evidence of the fact committed."  See Spinelli v. United States, 393 U.S. 410, 415-16 (1969); Aguilar v. Texas, 378 U.S. 108, 114-15 (1964).  In an analysis of the propriety of an investigative stop, a comparative application of the probable cause standard is helpful:

> [I]t is still sensible after Gates, in trying to ascertain in informant cases "the degree of relaxation from probable cause standard by the Williams - Terry standard of reasonable cause to stop," to examine those particular factors. That is, it remains useful to ask just how differently those factors weigh in the

(continued...)

In Florida v. J.L., 529 U.S. 266 (2000), the U.S. Supreme Court clarified the degree of corroboration necessary to establish reasonable suspicion. In a unanimous decision by the Court, Justice Ginsburg wrote as follows:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. <u>The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person</u>.

<u>Id.</u> at 272 (emphasis added). <u>Cf.</u> 4 W. LaFave, <u>Search and Seizure</u> § 9.4(h), p. 213 (3d ed.1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).

In this instance, Sergeant Kent Russell, after receiving the report of reckless driving, was able to identify the subject vehicle from the information provided by the anonymous caller: a black eighteen wheeler with "Smith" on the back being driven north on I-75 and having traveled onto the Exit 72 ramp. I am in accord with the majority's assessment that Sergeant Russell adequately corroborated the fact that the Defendant's vehicle was indeed the vehicle mentioned in the tip. I also agree that it was reasonable to deduce that, because the tip accurately identified the truck's location, it had been based on firsthand observation. None of these factors, however, corroborated that the tip was "reliable in its assertion of illegality," as required by <u>Florida v. J.L.</u>, 529 U.S. at 272.

Nevertheless, I believe that the majority's conclusion is correct under these facts. Before Sergeant Russell stopped to investigate, he observed the truck had been parked in the emergency lane of the exit ramp. That the truck had been parked in an unusual location, while of little consequence in and of itself, was corroborative of the allegation that the driver, for whatever reason, was unable to safely operate his vehicle. Articulable and reasonable suspicion is the standard, of course, not probable cause. <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979). In my view, the content of the tip, the identification of the vehicle from the description provided, and the single observation by the officer as to the location of the truck met the test – even if by a bare margin.

At the time of the defendant's arrest, Tennessee Code Annotated section 55-8-158 (1998) provided that "no person shall stop, park, or leave standing any vehicle whether attended or unattended, upon the paved or main travel part of the highway." Whether the vehicle was parked illegally or not, however, "even conduct which is wholly lawful . . . may form the basis for a reasonable suspicion that criminal activity is afoot," especially when combined with an informant's tip. <u>State v. Welch</u>, 873 P.2d 601, 604 (Wyo.1994). Even when the actions predicted by the tipster

---

²(...continued)
determination when the issue concerns grounds to stop rather than grounds to arrest or search (citations omitted).

3 W. LaFave, <u>Search and Seizure</u>, § 9.3(e), at 477 (2d ed. 1987).

and observed by the arresting officer, standing alone, appear to be compliant with law, their marked consistency with an anonymous tip may provide sufficient corroboration to form reasonable suspicion. Alabama v. White, 496 U.S. 325, 332 (1990). That Jerry Lee Hanning had stopped his truck in the emergency lane of the interstate exit was markedly consistent with a tip of reckless driving. That is, there was some independent evidence that he was either unable or unwilling to drive safely.

In State v. Pulley, this Court considered the propriety of an investigatory stop made by an officer who had just received two anonymous reports that a man driving a yellow Ford was armed with a shotgun with the intention of doing violence. This Court upheld the search, recognizing "the need for immediate police action in response to serious threats of harm" and determining that the potential "level of danger" was a "crucial factor." 863 S.W.2d at 32. The U.S. Supreme Court's opinion in the more recent Florida v. J.L., however, suggests that we should exercise caution before expanding Pulley beyond its narrow facts. In Florida v. J.L., our nation's highest court declined to find a "firearm exception" to the usual requirements for a Terry stop, see Terry, 392 U.S. at 30, concluding that "[s]uch an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." 529 U.S. at 272.

Similarly, I do not think the tip in this case was sufficient to warrant a departure from the usual requirements under our state and federal constitutions. Sergeant Russell knew only that the truck's driver had been accused of driving recklessly. The officer had no knowledge as to how or why, nor did he have any information indicating the level of danger posed by the alleged recklessness. Cf. State v. Miller, 510 N.W.2d 638, 644-45 (N.D. 1994) (discussing the relationship between the precision and detail of a tip and the amount of additional corroboration required). Florida v. J.L. left open the possibility that a lower threshold of corroboration might apply depending on the circumstances, such as an anonymous tip of a "person carrying a bomb." 529 U.S. at 273-74. An allegation of unspecified reckless driving, however, does not rise to the level of a tip that an individual is carrying a bomb or, as in Pulley, of an individual armed with a shotgun and actively threatening to do violence. Because the U.S. Supreme Court rejected a generalized "firearm exception," I am hesitant to join the majority to the extent that its opinion could be read as adopting a generalized "reckless driving" exception. Cf. Miller, 510 N.W.2d at 645 (holding that anonymous report of possible driving while intoxicated was insufficient to justify investigatory stop); Hall v. State, 74 S.W.3d 521 (Tex. App. 2002) (holding that anonymous report that driver had been driving the wrong way on the highway was insufficient to justify investigatory stop); McChesney v. State, 988 P.2d 1071, 1078 (Wyo. 1999) (holding that anonymous report of erratic driving was insufficient to justify investigatory stop).

Nevertheless, I agree with the majority that the investigatory stop in this case was compliant with constitutional safeguards. For that reason, I concur.

_____
GARY R. WADE, JUSTICE

3